MATTER OF BAILEY

In Exclusion. Proceedings

A-13959481

*Decided by Board August 9, 1965 and January 6, 1966*

An alien lawfully admitted to the United States for permanent residence but living in Canada where he is daily employed full time, who, since 1953, except for a short period, has entered, and will continue to enter, this country in his spare time as a returning resident alien "commuter," regularly but not ·daily, to work as a carpenter for anyone who will employ him (some jobs last about a month, some a few weeks), and who now seeks to enter in such capacity, is admissible as a returning resident "commuter" notwithstanding his employment in the United States is only part-time, is self-employment, and is not daily. ·

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20]—Immigrant without visa.

### BEFORE THE BOARD

The special inquiry officer has certified his order admitting the applicant to the United States as a commuter; no change will be made.

Applicant, a 40-year-old married male, a native and citizen of Canada, after entering the United States with an immigrant visa in 1953, returned to his home in Canada where he is and for the past 16 years has been employed as a Canadian customs officer, but has come to the United States in his spare time to work as a carpenter. For a short period he stopped coming, after he had been warned by a United States immigration officer that his employment in the United States may have been contrary to immigration laws; however, on November 3, 1964 he again entered the United States with an immigrant visa with the intention of pursuing his part-time carpentry work in the United States. A few days' work in Maine was followed by a period of unemployment for about a month. Employment in Vermont. of about four weeks was stopped when he required an operation. After spending about two months recovering,

he sought to reenter the United States to continue with his part-time carpentry; an immigrant inspector's ruling that he was not entitled to enter as a commuter resulted in this exclusion hearing.

The issues raised are whether the commuter privilege should be denied to the applicant because he also had a job in Canada or because in the United States he was self-employed rather than an employee. The special inquiry officer finding no precedent for barring entry ordered applicant admitted.

A commuter is an alien admitted to the United States for permanent residence who despite the fact that he is domiciled in foreign contiguous territory and often resides there is permitted to enter the United States as a resident alien to work or to seek work. To maintain commuter status, the alien must engage in work which is permanent and stable, or if he is coming to seek work, it must be of a similar nature and it must be obtained within six months of his entry. If the commuter stops working for other than health reasons, he will lose his commuter status unless he finds permanent and stable employment within six months following the loss. Inability of the alien to find employment because jobs are not available results in loss of commuter status even though he enters regularly to seek employment. The commuter is also treated as a resident alien for purposes of the report provisions of the Alien Registration Act. However, he is treated as a nonresident alien concerning naturalization, Selective Service, and the exclusion of nonresident aliens because their entry would have an adverse effect on American labor (*Matter of J—P—*, 9 I. & N. Dec. 591; *Matter of L—*, 8 I. & N. Dec. 643; *Matter of M—D—S—*, 8 I. & N. Dec. 209).

These precedents reveal that immigration statutes make no mention of the commuter status; it is an administrative device originated in 1927 to permit the continued entry of Canadian and Mexican nationals domiciled in their native lands who had for years been coming to the United States to work as nonimmigrants, but whose continued entry as nonimmigrants was made impossible by legislation which classed all persons coming to the United States to perform labor as immigrants. Congressional approval of the commuter status is found in the fact that Congress has shown awareness of the status and has not criticized it, nor has it in recent legislation included commuters in its definition of nonimmigrants (*Matter of H—O—*, 5 I. & N. Dec. 716).

The bases for the creation of the commuter status are given as, the desire to maintain good international relations, a matter of reciprocity, the concern for the livelihood of aliens who had been

commuting to the United States for employment, the needs of American industry, and the needs of communities which had grown up in close proximity to each other on both sides of the border.

Elements of organized labor in the United States believe that the existence of the commuter status is undesirable and unlawful: it is argued that commuters depress wages and cause unemployment among resident laborers whom Congress obviously desire to protect (*Karnuth* v. *U.S. ex rel. Albro*, 279 U.S. 231 (1929); *Amalgamated Meat Cutters & Butcher Work* v. *Rogers*, 186 F. Supp. 114 (D.C., 1960)).

In establishing standards for the commuter status, it might be urged as an original matter that the reasons which gave rise to the commuter status would require consideration of the following matters: the nature of the employment, the need for the alien's services in the United States, the ability of United States residents to obtain similar services conveniently and reasonably, the sources of the alien's income, and the effect upon him of barring him from entry; however, there are no laws or regulations imposing such tests—the test which has been used considers the intent of the alien to continue in the status, and whether the employment has been stable and regular (*Matter of L—*, 4 I. & N. Dec. 454). Intermittent employment has satisfied the requirement that employment be stable and permanent (*Matter of J—P—*, 9 I. & N. Dec. 591; *Matter of Chaparro-Portillo*, A–10532787 (January 8, 1964) (unreported) (domestic work three days a week for part of the period; one day a week plus an occasional additional day during week for rest of period)). Using the controlling test, we find that the alien here has not abandoned his intention to continue in the commuter status. We find that the frequency and regularity of the respondent's employment in the United States while he was able to work is sufficient to satisfy the requirement that his employment be stable and permanent. No change will be made in the order of the special inquiry officer.

We would point out that evidence required to terminate commuter status must be reasonable, substantial and probative and considered in view of the fact that the commuters are technically regarded as legally resident aliens. Moreover, where commuters involved are aliens who have been coming to the United States for a period of time, and are applying to come to or to seek employment, we would assume in view of the time elapsing before final adjudication is made, that they will be paroled into the United States during the pendency of the appeal.

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.

## BEFORE THE BOARD

The Service moving for reconsideration of the Board's order of August 9, 1965 which affirmed the special inquiry officer's action admitting the applicant as a commuter asks that the applicant be excluded. The motion will be denied.

Counsel contends the motion was not timely filed. We find there was an incomplete filing within the time granted because there was a failure to file proof with the Board of timely service of the motion on counsel. We shall take the matter by certification. The regulation provides in pertinent part that the Service officer—

shall cause one copy of the motion [for reconsideration] to be served upon the alien or party affected, as provided in Part 292 of this chapter, and shall cause the record in the case and one copy of the motion to be filed directly with the Board, together with proof of service upon the alien or other party affected (8 CFR 3.8(c)).

This regulation requires the motion to be filed "together" with proof that service has been made upon the alien. Thus, there is no more reason to permit untimely service of the motion on the alien than there is to permit untimely service of the motion on the Board. That service of the motion on the applicant was untimely is clear. The Service was granted until September 20, 1965 to perfect its motion. The Board was served with a copy of the motion on this date; however, counsel was served by mail eight days later and proof of such service was not filed with the Board until October 1, 1965. In view of the importance attached by the Service to the motion we shall take it by certification.[1] (We shall consider applicant's reply brief which also was not timely filed since it should have been filed by October 9, 1965 but was filed October 13, 1965. The reply brief states that the motion is defective under the regulations in that it is not based upon new matter and that the Service has cited no authority directly supporting its views.)

---

[1] Compliance with 8 CFR 3.8(c) imposes no difficult burden on the Service. Here, for example, there could have been compliance had a copy of the motion been mailed to the applicant on the day the motion was served on the Board (8 CFR 292.5). (If the Service believes that in the interest of justice personal service of the motion should be made even though there has been timely service by mail, the Service should notify the Board of its belief; the Board may then delay consideration of the motion until personal service is made.)

The facts have been fully stated in previous orders. The question is what conditions an alien must meet to acquire and keep the right to come to the United States as a commuter—a person living in foreign contiguous territory who regularly comes to the United States to work.

The right of an alien to work in the United States is, with exceptions not pertinent here, confined to those who have been admitted for permanent residence; however, it does not follow that such an alien must reside in the United States: he may, if he desires, continue or begin to make his home in foreign contiguous territory and commute to employment in the United States. There being an absence of statute or regulation setting standards for commuters, we reviewed the cases and history and found, that to be considered a commuter, it was necessary that the alien who had been lawfully admitted for permanent residence take regular employment in the United States, have the continuing intention to come for such purpose, and have no break in employment for, as long as six months (unless the unemployment was caused by illness). Applying the rules to the instant case, we found that the special inquiry officer had properly ordered the admission of the applicant—an alien lawfully admitted for permanent residence but living in Canada where he is daily employed, and who, except for a short period, has entered since 1953, and will continue to enter in his spare time, regularly but not daily, as a self-employed carpenter to work for anyone who will employ him (some jobs last about a month some a few weeks). He seeks to enter now in the same capacity. The Service contends that the applicant is inadmissible because the conditions which must be met by a commuter and are not met by him, are that he enter daily, that the employment in the United States be full time, and that the employment be not self-employment.

The Service finds its conditions not in authority directly sustaining its position—the Service cites no case holding that part-time employment, or intermittent employment, or self-employment, or employment requiring less than daily entries prevents one from being a commuter—but in general expressions concerning stable employment in cases in which the issue concerned unemployment for six months on the part of an alien who had been coming daily, or cases involving the absence of any employment, or so little employment (two hours) that it would be fanciful to consider it stable employment, or cases involving the presence of a ground of inadmissibility not pertinent here.