## MATTER OF KANE

### In Exclusion Proceedings

### A-10128460

*Decided by Board April 1, 1975*

The applicant for admission in this case had been admitted for permanent residence with an immigrant visa in 1964. Since 1967, however, she has spent 11 months of each year living in her native country of Jamaica in an 8 room house which she operates as a lodging house Each year she comes to the United States for one month which she spends in a furnished room which she rents by the week. Applicant presented herself for admission as a special immigrant under section 101(a)(27)(B) [now (A)] of the Immigration and Nationality Act and was found excludable under section 212(a)(20) of the Act, for lack of a valid immigrant visa. Looking at the purpose of her departure, the duration of her absence, her home, family and employment ties, it was concluded that she had abandoned her permanent residence in the United States and was therefore excludable on the ground alleged. (*Saxbe* v. *Bustos,* 419 U.S. 65, related to "commuters" returning to employment in the United States and can be distinguished from one who has no ties of residence or employment here.)

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no visa

ON BEHALF OF APPLICANT: George W. Drake, Esquire
500 Ingraham Building
Miami, Florida 33131

This is an appeal from the immigration judge's order of exclusion. The appeal will be dismissed.

The record relates to a married female alien, 69 years of age, who is a native and citizen of Jamaica. She was lawfully admitted for permanent residence on March 18, 1964 in possession of an immigrant visa. For two years thereafter shw lived with her husband in New York; then she separated from him and moved to Florida. She departed from the United States during 1967. Since that departure she has been absent from the United States for 11 months of each year, during which time she has been living in Jamaica in an eight-room house which she owns and operates as a lodging house. She supports herself from the rents she receives from her lodgers. The purpose of her annual trips to the United States has been to maintain her legal resident status in the United States and for rest. While here, she was rented a furnished room in Florida by the week.

The applicant last presented herself for admission on July 31, 1972, in possession of Form I-151 (Alien Registration Receipt Card), and requested admission as a special immigrant, returning from a temporary visit abroad. She was traveling on a 21-day excursion round-trip airplane ticket, originating from and returning to Jamaica. An exclusion hearing was conducted at which the immigration judge held that she was not entitled to admission, because she had no residence in the United States to which to return.

To qualify as a "special immigrant" given dispensation from normal documentation requirements and numerical limitations, an alien must be "an immigrant lawfully admitted for permanent residence, who is returning from a temporary visit abroad." Section 101(a)(27)(B), Immigration and Nationality Act.

The phrase "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Section 101(a)(20), of the Act.

The word "permanent" is defined as "a relationship of continuing or lasting nature, as distinguished from temporary, . . ." even though the relationship may be one that can be dissolved eventually at the instance of either the United States or the individual. Section 101(a)(31) of the Act.

Lastly, "residence" is defined as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." Section 101(a)(33) of the Act.

An Immigration and Naturalization Service regulation provides that in order to be exempted from the normal documentation requirements upon entry, an alien must be returning "to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad." If the temporary absence has not exceeded one year, he may be admitted upon presentation of Form I-151, Alien Registration Receipt Card, 8 CFR 211.1(b)(1).

The application of these provisions to the factual situation in the present case, necessitates scrutiny of the recent decision in *Saxbe* v. *Bustos*, 419 U.S. 65. In that case the Court was concerned with the meaning of section 101(a)(27)(B) in relation to the aliens who have their homes in Canada or Mexico, and who commute daily, or on a seasonal basis, to places of employment in the United States, without actually establishing a permanent residence in this country. Such aliens are originally admitted as immigrants, and thereafter cross the borders upon presentation of their "green card", pursuant to section 211(b) of the Act.

*Saxbe* v. *Bustos* posed the question "whether commuters are 'lawfully

admitted for permanent residence' when they have no actual residence here in this country." The Court found that "lawfully admitted for permanent residence" as defined in section 101(a)(20) of the Act creates a *status* or *privilege* which need not be reduced to a permanent residence so long as the status has not been changed; that the status is not changed merely because residence in the United States was never claimed; and that the change in status which Congress had in mind was a change from an immigrant lawfully admitted for permanent residence to the status of a nonimmigrant pursuant to section 247.[1] The Court noted that the *status* carried with it several important privileges; *viz.*, the alien might remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States. The Court thus concluded that commuters were immigrants lawfully admitted for permanent residence and that they could be viewed as returning from a temporary absence abroad, admissible upon presentation of their Alien Registration Card, despite the absence of a permenent residence in this country.

It is noteworthy that in reaching this conclusion the Court discussed at considerable length, and gave great weight to, an administrative practice dating back to at least 1927, of admitting commuters as immigrants and permitting border-crossing privileges as returning residents afterwards, despite the lack of a permanent residence. The decision commented at length on the recognition of the practice by the Congress, as well as the many harmful political, economic, and social consequences which could flow from a reversal of the long standing rule. It is particularly notable that the Court stated ". . . the meaning of the phrase lawfully admitted for permanent residence in section 101(a)(27)(b) of the Act may not be identical to the meaning of the same language in other sections of the Act where the same history of administrative construction is not present."

In the light of this language, and the restrictive discussion in *Saxbe v. Bustos,* there is grave doubt that the Court intended its ruling to have any wider application than to the problem before it, namely, the status of commuters as returning residents, or that it intended to impeach generally the statutory definitions in sections 101(a)(31) and 101(a)(33)

---

[1] There are other ways, not noted by the Court, in which status may change. For example, status may be lost if the returning immigrant is found to have reentered illegally by means of a false representation of United States citizenship, *Matter of R—,* 8 I. & N. Dec. 598, 599 (Asst. Comr. 1960), or by a surreptitious entry, *Matter of M—,* 5 I. & N. Dec. 642, 647 (BIA 1954). The status can be lost when an alien departs after a final order of deportation has been entered, *Matter of Mosqueda,* 14 I. & N. Dec. 55 (R.C. 1972), and by rescission pursuant to section 246 of the Act. It can also be intentionally relinquished, *Matter of Montero,* 14 I. & N. Dec. 399 (BIA 1973). See also *Matter of Gutot,* 14 I. & N. Dec. 393 (DD 1973)

of the Act. Nor do we regard the regulatory force of 8 CFR 211.1(b), granting exemption from normal documentary requirements and permitting reentry upon presentation of Form I-151, Alien Registration Card, to an alien returning to his "unrelinquished permanent residence" from a "temporary absence abroad," as substantially impaired by the ruling in *Bustos*. Rather we interpret that decision as holding that the commuter, because of the singular history of his status, and the nexus of his continuing employment in the United States, comes within the embrace of that regulation.

However, even if *Bustos* is not read that narrowly, we can see a marked distinction between the alien admitted to the United States for permanent residence and having continuing and substantial ties with this country through his employment, and one who has no ties of residence or employment, either because he has abandoned them, or because he never had them in the first place. We see no reason, from the holding in *Bustos*, to accord such an alien the liberal interpretation of 8 CFR 211.1(b) granted the commuter. On the contrary, it is our view that before he can qualify as a special immigrant under section 101(a)(27) he must be "returning from a temporary visit abroad", and that before he can receive the Attorney General's waiver of normal documentary requirements authorized under section 211(b) of the Act, as implemented by 8 CFR 211.1(b), it must be shown that he is returning "to an unrelinquished lawful permanent residence in the United States."

As a general comment, and because the immigration judge took a different position, it must be stated that we do not regard "the place of general abode," and the "principal, actual dwelling place in fact, without regard to intent "(section 101(a)(33) of the Act), as necessarily determinative, although it is obviously a useful aid in ascertaining whether the alien is returning from a temporary absence abroad and may be scrutinized for that purpose. The definition of "residence" in section 101(a)(33) is clearly relevant to those parts of the statute which require "residence" as a prerequisite to the grant of a privilege or waiver, such as naturalization (section 316 *ff*) but section 101(a)(33) does not purport to define *permanent* residence, nor does section 101(a)(27)(B), *per se*, condition or limit the grant of permanent resident "status" on the assumption of a general abode in the United States, as the Court clearly enunciated in *Saxbe* v. *Bustos*, supra. What must be borne in mind here is that in the light of *Bustos*, "unrelinquished lawful permanent residence", as used in 8 CFR 211.1(b), can have reference to something less than a permanent dwelling place in the United States.

It becomes necessary then to examine the factors bearing on a determination whether the alien is returning from a temporary visit abroad.

Historically, the Quota Act of 1921 contained an exception from its

provisions for "aliens returning from a temporary visit abroad," section 2, Act of May 19, 1921 (42 Stat. 5, 8 U.S.C. 229). The Act contained no definition of "temporary visit," but rules promulgated in accordance with the statute construed it to mean an absence not exceeding six months in duration, Rule 2a, Immigration Rules, quoted in *U.S. ex rel. Randazzo* v. *Tod,* 297 F. 214 (C.A. 2, 1924); see *Lidonnici* v. *Davis,* 16 F.2d 532 (D.C. Ct. App. 1926). Later rules created a presumption that a trip exceeding six months was not temporary, but provided that the presumption could be overcome by the alien. Immigration Rules of February 1, 1924, Rule 9, subdivision G, paragraph 1, quoted in *U.S. ex rel. Devenuto* v. *Curran,* 299 F. 206 (C.A. 2, 1924).

The Act of 1924 classified as a nonquota immigrant [2] "an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad," section 4(b) of the Act of 1924, 8 U.S.C. 204(b). The accompanying administrative rule dropped the six months presumption. "An alien claiming to be a nonquota immigrant by reason of having been previously lawfully admitted to the United States and to be returning from a temporary visit abroad shall be required to establish such fact to the satisfaction of the examining immigration official. . . ." Immigration Rules of July 1, 1925, subdivision I, Rule 3, paragraph 2, quoted in *Serpico* v. *Trudell,* 46 F.2d 669 (D. Ver. 1928). The six months time limitation no longer exists and has relevance only for historical purposes.

Courts which have considered the issue of what constitutes a "temporary visit abroad" have identified a number of factors. Inasmuch as the language "returning from a temporary visit abroad" in the current Act is identical to the language used in prior Acts, the interpretation given that phrase under those prior acts is relevant. "It is unlikely that the word 'temporarily,' . . . is subject to inflexible definition, unvarying in application to all cases." *Gamero* v. *INS,* 367 F.2d 123, 126 (C.A. 9, 1966). "What is a temporary visit cannot be defined in terms of elapsed time alone, when it is of such duration that its temporary character may reasonably be questioned. Then the intention of the visitor, when it can be determined, will control." *United States ex rel. Polymeris* v. *Trudell,* 49 F.2d 730, 732 (C.A. 2, 1931). Subjective intent can sometimes be determined from examination of such elements as:

(1) *Purpose for departing.* The traveler should normally have a definite reason for proceeding abroad temporarily. See *U.S. ex rel Alther* v. *McCandless,* 46 F.2d 288 (C.A. 3, 1931); examples are education and professional training, *Serpico* v. *Trudell,* supra; employment for a definite, "albeit extended period," by accepting a two-year teaching position with a foreign university, *Matter of*

---

[2] A nonquota immigrant was equivalent to a "special immigrant" in the current Act.

*Guiot*, supra; indefinite employment abroad when assigned by one's United States employer, *Matter of Wu*, 14 I. & N. Dec. 290, (RC 1973), *Matter of Manion*, 11 I. & N. Dec. 261 (DD 1965); liquidation of assets, *Matter of Souqi*, 14 I. & N. Dec. 390, (RC 1973).

(2) *Termination date.* The visit abroad should be expected to terminate "within a period relatively short, fixed by some early event," *U.S. ex rel. Lesto* v. *Day*, 21 F.2d 307, 309 (C.A. 2, 1927); *Matter of Castro*, 14 I. & N. Dec. 492 (BIA 1973). If unforeseen circumstances cause an unavoidable delay in returning, the trip would retain its temporary character, so long as the alien continued to intend to return as soon as his original purpose was completed. For example, war might inhibit travel or the alien might be drafted, *Serpico* v. *Trudell*, supra; there might be illness, *Transatlantica Italiana* v. *Elting*, 66 F.2d 542, 545 (C.A. 2, 1933); there might be a death requiring remaining abroad to settle an estate, *U.S. ex Polymeris* v. *Trudell*, supra.

(3) *Place of employment or actual home.* The traveler must intend to return to the United States as a place of employment or business, *Saxbe* v. *Bustos*, supra; *Gooch* v. *Clark*, 433 F. 274 (C.A. 9, 1970), cert. den. 402 U.S. 995 (1971); *Matter of Bailey*, 11 I. & N. Dec. 466 (BIA 1965 and 1966); or as an actual home, *U.S. ex rel. Lesto* v. *Day*, supra; *Matter of D—C—*, 3 I. & N. Dec. 519 (BIA 1949). He must possess the requisite intention to return at the time of departure, *U.S. ex rel. Lesto* v. *Day*, supra; and must maintain it during the course of the visit, *Gamero* v. *INS*, supra; *Matter of B—*, 9 I. & N. Dec. 211, 213 *ff* (BIA 1961), reversed on other grounds, *Barrese* v. *Ryan*, 203 F.Supp. 880 (D. Conn. 1962).

In *Matter of Quijencio*, 15 I. & N. Dec. 95 (BIA 1974) we noted the significance of the location of the alien's ties, such as family, job or property, as an aid in determining the alien's intent. See also *Santos* v. *INS*, 421 F.2d 1303 (C.A. 9, 1970); *Matter of Castro*, 14 I. & N. Dec. 492, (BIA 1973), reversed on other grounds, *Castro-Guerrero* v. *INS*, 503 F.2d 964 (C.A. 5, 1974); *Matter of Montero*, supra; *Matter of Salviejo*, 13 I. & N. Dec. 557 (BIA 1970).

Since the number and nature of the ties will vary widely, the question is often one of determining whether the ties here are reasonably indicative of the alien's continuing desire and intent to return after a temporary absence. Nor will the bare claim of unawareness of possessing the status of a lawful permanent resident, establish a lack of intent to abandon, where the allegation falls short of establishing an affirmative intent to return to the United States after a temporary visit abroad. *Matter of Quijencio*, supra. On the other hand, a possible justifiable reliance on a misstatement of a United States official, contributing to

extended absence and failure to return, has been held to be a factor that warrants full exploration. *Tejeda* v. *INS*, 346 F.2d 389 (C.A. 9, 1965).

The above factors are obviously interrelated one with another. The more limited the temporary purpose of the trip abroad, the shorter the trip, and the stronger the ties in the United States, the more likelihood that permanent residence status has not been abandoned. The variance in these factors is well illustrated by *Serpico* v. *Trudell*, supra. There a boy was sent to Italy for schooling, and remained out of the United States for ten years attending secondary through medical schools. The Court noted that he did not intend to remain abroad indefinitely or to practice his profession there, but intended to return to his home in this country as soon as he completed his professional training; that he was returning to a home which had been kept for him by his father and mother, during all the time he was away.

One last general consideration remains. Before weighting the evidence, it must be determined whether the applicant bears the burden of proof to establish returning residence status, or the Service has the burden of showing it lacking. By statute, an applicant for admission must prove that he is not subject to exclusion under any provision of the Act, and that he is entitled to the status claimed, section 291 of the Act. In *Kwong Hai Chew* v. *Colding*, 344 U.S. 590 (1953), the Court held that a lawful returning resident alien was "assimilated . . . to the status of a continuous resident . . ." entitled to a due process hearing. In *Chew* v. *Rogers* (D.C. Cir. 1958) 257 F.2d 607, the court said flatly ". . . if Chew is to be deprived of his status . . . the Immigration and Naturalization Service may do so only in proceedings in which the Service is the moving party, *and it bears the burden of proof*, . . ." (Emphasis supplied) This Board has already affirmed its awareness of *Chew* v. *Rogers* in *Matter of Becerra—Miranda*, 12 I. & N. Dec. 358 (BIA 1967).

Clearly, under section 291 and sections 235 and 236 of the Act, the Immigration and Naturalization Service has the authority and responsibility to inquire into the bona fides of a claim to returning resident alien status.

Similarly, the waiver of a returning resident alien document under section 211(b) and accompanying regulations, by the Attorney General, is discretionary, and the Government must satisfy itself by inquiry that favorable discretion is warranted. However, once a colorable claim to returning lawful resident alien status is established, it is our view that *Chew* v. *Rogers* places the ultimate burden on the Government if the alien is to be deprived of that status, either because the status has changed, or for causes having nothing to do with the status [(e.g.— subversive activity (*Kwong Hai Chew* v. *Colding*, supra)); or smuggling aliens for gain (*Becerra–Miranda*, supra)].

## CONCLUSIONS

Turning now to the facts of this case, we find that the applicant was lawfully admitted for permanent residence and sought to retain her status as a lawful permanent resident of the United States by making annual trips to the United States. However, her desire to retain her status, without more, is not sufficient. To have retained her status, it is required that there have been no change in her status, and that her visits abroad have been temporary. We find that her status changed after her 1967 departure.[3] Beginning in 1967, the applicant's trips abroad were not for a specified purpose of limited duration. On the contrary she has been living in Jamaica indefinitely. Her returns were related solely to the preservation of her Form I-151 as a reentry document, rather than the resumption of any permanent resident status in this country. The returns were brief and technical interruptions of an absence which has continued in essence since her departure in 1967, as typified by this last attempted reentry when she traveled here on the first portion of a round-trip 21-day excursion airplane ticket from and back to Jamaica. Neither her business nor residence ties are in the United States. She has no job in the United States. Her husband resides in the United States but she separated from him and moved to Florida prior to her 1967 departure. She appears to have a sister in the United States, but there is no showing that she makes her home with her sister. During each of her annual trips to the United States, she has rented accommodations on a temporary basis in a rooming house in Florida. She has left some belongings there on occasion, but that alone is not sufficient. In Jamaica she has a house in which she lives and which constitutes her place of business. Her offspring all reside in Jamaica.

We find that she is not admissible as a lawfully returning resident alien and is excludable for lack of a valid immigration document.

ORDER: The appeal is dismissed.

Theodore P. Jakaboski, Alternate Board Member, submits a concurring opinion.

Although the result reached by the majority is correct, there are two legal points concerning which I respectfully disagree.

First, the treatment of the question of burden of proof in the majority opinion unnecessarily casts the issue in terms of a choice between two

---

[3] All of the applicant's absences since her 1967 departure are relevant, because she must have had lawful permanent resident status at the time of her last departure. That in turn, is dependent on her having maintained it since the time of her first departure. If any of her absences have been other than temporary in nature, she has lost the status of lawfully admitted immigrant and would not now have that status.

She testified at the hearing that she would now stay permanently if that is required. If her status has already changed because her trip or trips were not temporary, she cannot restore it now.

265

mutually exclusive positions: the applicant bears the burden of proof to establish returning resident status or the Immigration and Naturalization Service has the burden of showing it lacking. According to law, section 291 of the Immigration and Nationality Act, the applicant has the burden of proving that he is not subject to exclusion. As the dissent points out, that burden never shifts. In my opinion, the majority order relies overly much on the language contained in *Chew* v. *Rogers*, 257 F.2d 607 (D.C. Cir. 1958) which states: ". . . if Chew is to be deprived of his status . . . the . . . Service may do so only in proceedings in which [it] is the moving party, and it bears the burden of proof . . ." It is unlikely that the court wanted to give literal effect to the language cited. To do so would be to turn the statutory burden of proof completely around. It would be far better, in my opinion, to interpret the holding in the *Chew* v. *Rogers* case to mean that, without subtracting from the alien's burden of establishing returning resident status, once the person seeking admission has made out a prima facie showing of compliance with the statutory burden, he shall be admitted, unless the Government can show that he is no longer entitled to such status. At that point in the proceedings, if the Government seeks to deprive the alien of such status, it assumes the burden of going forward with its evidence. This is not the same thing as the Government assuming the burden of proving the applicant inadmissible. This approach seems to me to be more in harmony with the intent of the court's decision in *Chew* v. *Rogers* than requiring the Immigration Service to bear the burden of proving inadmissibility.

Second, there does not appear to be sufficient justification for eluding the plain meaning of section 101(a)(33) of the Immigration and Nationality Act, particularly in light of the legislative history. In report of the Committee on the Judiciary which accompanied S. 2550, the Chairman of the Committee noted that "The term 'residence' as defined in section 101(a)(33) means the place of general abode, and the place of general abode of a person means his principal actual dwelling place in fact, without regard to intent." [1] His exact words now appear in section 101(a)(33) of the Act. The Chairman went on in his report to say "This definition is a codification of judicial constructions of the term 'residence' as expressed by the Supreme Court of the United States in *Savorgnan* v. *United States*, 338 U.S. 491 (1950). It is pertinent that the *Savorgnan* case dealt with a woman who, from 1941 to 1945, had lived with her husband and his family in Rome, except for 6 months internment in Austria. The court said: "Whatever may have been her reasons, wishes, or intent, her principal dwelling place was in fact with her husband in

---

[1] Joint Hearings before the Subcommittees of the Judiciary. Eighty-Second Congress, First Session, on S. 716, H.R. 2379, and H.R. 2816, Bills to revise the laws relating to immigration, naturalization, and nationality, Report No. 1137, p. 4.

Rome . . . Her intent as to her 'domicile' or as to her 'permanent residence' as distinguished from her actual 'residence,' 'principal dwelling place,' and 'place of abode' is not material . . ." Regardless of our conception of the wisdom or unwisdom of this rule, the Congress nevertheless did adopt the *Savorgnan* approach in section 101(a)(33) of the Act. It is of no consequence to distinguish the *Savorgnan* case on the ground that it dealt with a nationality claim, for the Immigration and Nationality Act of 1952 uses the same definition for both immigration and nationality matters.

Louis P. Maniatis, Board Member, submits a separate opinion.

I agree that the appeal must be dismissed.

However, it appears to me that the majority opinion arrives at the conclusion that the burden of proof in similar type situations rests with the Service, and cities as its authority the *Matter of Becerra-Miranda,* 12 I. & N. Dec. 358 (BIA 1967), which in turn relies greatly on *Kwong Hai Chew* v. *Captain Sevend Colding,* 344 U.S. 590 (SC 1953) and *Kwong Hai Chew* v. *William P. Rogers,* 257 F.2d 606 (DC Cir 1958).

A correct reading of the decisions relied upon indicate that the Supreme Court in the *Chew* case, and the United States Court of Appeals in the second *Chew* case does not support the rationale adopted by the majority and from which I quote:

" . . . the Court held that a lawful returning resident alien was "assimilated" . . . to the status of a continuous resident . . ." entitled to a due process hearing.

However, once a colorable claim to returning lawful resident alien status is established it is our view that *Chew* v. *Rogers* places the ultimate burden on the Government if the alien is to be deprived of that status, either because the status has changed, or for causes having nothing to do with status."

An analytical reading of the cited cases does not support even a colorable claim for such a conclusion. The majority took a wide paint brush and glossed over the true intent and purport of these decisions.

I respectfully submit that what the Supreme Court held in the *Chew* case was a narrow and restrictive determination, based on the facts of that case, that it felt justified in "assimilating" his *(Chew)* status for purposes of his constitutional right to due process to that of continuously present alien residents entitled to a hearing at least before an executive or administrative tribunal. The Court further stated that it did not reach the question whether or not for immigration purposes *Chew* was to be "treated as an entrant alien." It also stated the issue is not one of exclusion, expulsion or deportation. Nowhere does it, even in its broadest interpretation, relate to granting any specific class greater privileges to which they may be entitled to under the immigration laws.

In fact, after the Supreme Court rendered its decision, the United States Court of Appeals in the second *Chew* case, *Kwong Hai Chew* v.

267

*Rogers*, supra, carried the situation one step further, declaring that if *Chew* is to be deprived of his status . . . a status described in *Kwong Hai Chew* v. *Colding*, supra, as "assimilated . . to that of an alien continuously residing and physically present in the United States," the Immigration and Naturalization Service may do so only in proceedings in which the Service is the moving party, and bears the burden of proof. It must be noted that *Chew* v. *Rogers*, supra, applies only to the status described in *Chew* v. *Colding*, supra.

If there was any doubt as to the Supreme Court's decision in *Chew* v. *Colding*, supra, it was found necessary by this tribunal to elaborate and explain the position taken in the Chew case, in a later decision in *Edward J. Shaughnessy* v. *United States of America*, ex rel. Ignatz Mezei, 345 U.S. 206 (SC 1953). There the Court held:

"For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same and may be excluded if unqualified for admission under existing immigration laws. (underscoring supplied)

To be sure, a lawful resident alien may not captiously be deprived of his constitutional rights to procedural due process (citations omitted). Only the other day we held that under *some* circumstances temporary absence from our shores cannot constitutionally *deprive a returning lawful resident alien of his right to be heard* (reference is made to the *Chew* v. *Colding* case). On the facts of that case including reference to Section 307(d)(2) of the Nationality Act of 1940, 8 U.S.C. Section 707(d)(2), we felt justified in "assimilating" his status for constitutional purposes to that of continously present alien residents entitled to hearings at least before an executive or administrative tribunal." (underscoring supplied)

Due process has never been precisely defined for the reason that it cannot always mean the same, since procedure must be adapted to the particular case. It does not always mean proceedings in court. The fundamental requirement is an opportunity for a hearing and a defense, but no fixed procedure is demanded. It does not refer to any general system of law, but must be construed with reference to historical developments and such acts of government as settled maxims of law and custom.

The only requirement is that procedural due process of law be afforded the alien and under section 291 of the Immigration and Nationality Act the burden is upon such alien to prove his entitlement to enter.

Great stress has been placed, by the majority, on a recent Supreme Court decision in *Saxbe* v. *Bustos*, 419 U.S. 65, which in my opinion is of little comfort in the instant case. Here the exclusive issue was that of commuters.

In my opinion *Becerra–Miranda*, supra, misconstrues the purport and tenor of the *Chew* cases and I would recede from that determination.