## MATTER OF HUANG

### In Exclusion Proceedings

A-37289542
A-37289543
A-37289544

*Decided by Board September 28, 1988*

(1) Where an applicant for admission to the United States has a colorable claim to returning resident status, the burden is on the Immigration and Naturalization Service to show by clear, unequivocal, and convincing evidence that the applicant should be deprived of his or her lawful permanent resident status.

(2) An alien acquires lawful permanent resident status at the time of his initial admission to the United States as a lawful permanent resident, as at that point he attains "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws," and is thus an alien "lawfully admitted for permanent residence" pursuant to section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (1982).

(3) For purposes of determining whether the applicant has abandoned her lawful permanent resident status, an applicant's absence from the United States due to her husband's having a contract to work and study at a Japanese university cannot be said to be a temporary visit abroad fixed by some early event, where the record does not show a clear demarcation as to when her husband's relationship with the university would end.

EXCLUDABLE: Act of 1952—Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa (all applicants)

ON BEHALF OF APPLICANTS:
Bernard S. Karmiol, Esquire
Mazo & Vidor
9744 Wilshire Boulevard, Suite 402
Beverly Hills, California 90212

ON BEHALF OF SERVICE:
Gregory E. Fehlings
General Attorney

BY:  Milhollan, Chairman; Dunne and Morris, Board Members. Concurring and

Dissenting Opinion: Heilman and Vacca, Board Members.

In a decision dated May 13, 1986, an immigration judge found the applicants excludable under section 212(a)(20) of the Immigra-

tion and Nationality Act, 8 U.S.C. § 1182(a)(20) (1982), as aliens with no valid immigrant visas, and ordered them excluded and deported from the United States. The applicants have appealed from that decision. The appeal will be dismissed. The request for oral argument before the Board is denied.

The applicants are natives and citizens of Taiwan and include a female adult who is 38 years old, and her two minor children, ages 8 and 11.[1] They were initially admitted to the United States as lawful permanent residents on June 5, 1982. The applicant's husband, the father of the children in question, was admitted as a lawful permanent resident a week earlier. The record reflects that the applicant's husband, after receiving his Alien Registration Receipt Card (Form I-551), returned to Japan to continue studying and working at a university's medical school as a medical doctor in the field of neurosurgery. Both the applicant and the Immigration and Naturalization Service stipulated at the exclusion hearing that the applicant's husband had entered into a contract with the medical school for this purpose in May 1981, and that the contract was for a period of 5 years. The applicant and the two children remained in Los Angeles, California, for approximately 3 to 4 weeks at the home of her husband's sister, a United States citizen. Thereafter, she and the children returned to Japan. The applicant and her two children last sought to reenter the United States on May 10, 1986, at which time they were placed in exclusion proceedings. In a sworn statement dated that same day, the applicant reported that she intended for her children to go to school in the United States and to live in this country forever, while she planned to return to Japan in 2 months.

The applicant testified at the exclusion hearing that her husband had been a medical doctor in Taiwan and had entered into the contract with the medical school in Japan, as they thought that it would take a great deal of time before they would be granted visas to enter the United States as immigrants on the basis of a visa petition filed by her husband's sister. She also related that she and her two children had returned to the United States every year since 1982 for 3 or 4 weeks in March or April in order to maintain her lawful permanent resident status. According to the applicant, she and the children would stay with her husband's sister. She reported that her children attended a Chinese school in Japan, but

---

[1] In this decision, references to the applicant shall pertain solely to the female adult applicant, as the excludability of the children is dependent on the excludability of the female adult applicant. Abandonment of lawful permanent resident status of a parent is imputed to a minor child who is subject to the parent's custody and control. *Matter of Winkens*, 15 I&N Dec. 451 (BIA 1975).

that they had also attended a preschool in the United States for a short period in 1982 and had also attended school in this country for a short period in 1984. According to the applicant, her husband had not returned to the United States since 1982 and had never worked in the United States. She also related that she had worked at the Taiwan consulate in Japan for 3 years, until February 1985, and that they had sold their property in Japan in October 1985.

At the exclusion hearing, the applicant reported that she and her husband had invested in a condominium in Long Beach, California, through a partnership or joint venture, beginning in 1980, and had paid investment taxes to the United States. She also related that she and her husband had purchased a house in Los Angeles, California, in 1985 and paid property taxes on the house. She additionally noted that she had a bank account in the United States.

Additional documents have been submitted by the applicants on appeal, including a June 18, 1986, letter from the chairman of the department of neurosurgery at Osaka University Medical School. In the letter, the chairman related that the applicant's husband had come to Japan on May 23, 1981, and since June 1, 1981, had been working as a research fellow in the department of neurosurgery. According to the chairman, he had been working as a staff neurosurgeon at another hospital since July 1, 1985, and had passed the Japanese National Board of Medical License in May 1982. An additional certificate from the dean of the medical school certifies that the applicant's husband had been a research student at the school's department of neurological surgery from July 1, 1983, to the present time.

A letter from the applicant's husband, dated June 12, 1987, has also been submitted. In the letter, her husband reported that he had been a neurological surgeon in Taiwan until 6 years earlier, when he decided to research and study more in that field and therefore entered a doctorate program at a medical school in Japan. According to the applicant's husband, he still needed to complete his dissertation and might have his doctorate degree in 1987. He indicated that he desired to stay in the United States after he passed an examination for neurological specialists the following year. Noting that he and his wife had a house in California as well as a bank account, he stated that they intended to stay and live in the United States even though they had been unable to do so for the past 5 years.

The immigration judge concluded that the applicant and her two children were excludable under section 212(a)(20) of the Act as aliens not in possession of valid immigrant visas, as they had never

established their lawful permanent resident status. He concluded that even if they had, they had abandoned that status. He determined that they had never established a residence in the United States, and that their intent regarding their residence or domicile was irrelevant, noting that the Act defined "residence" as the actual dwelling place in fact, without regard to intent.

On appeal, the applicant contends that her and her family's intent is relevant to the question of whether their lawful permanent resident status has been abandoned. She asserts that she and her children never abandoned that status, as they had always intended to settle in the United States following the completion of her husband's doctoral program in Japan, which was now expected in 1988. She points out that when her husband began his training in 1981, they were unaware that his priority date for coming to the United States would be reached in early 1982. Noting that her family's Japanese residency documents submitted at the exclusion hearing show that her family was residing only in a temporary status which had to be renewed yearly, the applicant asserts that their purchase of investment property in 1980 and a house in 1985, as well as their bank account and payment of taxes in the United States, also show her intent.

The Service contends on appeal that the applicants have abandoned their lawful permanent resident status.[2] In doing so, it points out that the applicant's husband has never returned to the United States, that the applicant herself has worked for years in Japan, that the applicant's children attend school in Japan, and that they own a home in Japan and have never had a residence in the United States. It further notes that the applicant's visits to the United States have been brief, and only for the purpose of giving the appearance of maintaining a residence in this country.

Section 212(a)(20) of the Act requires the exclusion of immigrants seeking admission to the United States if they do not possess a valid immigrant visa, re-entry permit, or other valid entry document. Section 211(b) of the Act, 8 U.S.C. § 1181(b) (1982), however, permits the Attorney General to waive those documentary requirements and, hence, the section 212(a)(20) ground of excludability, for any alien who is a returning resident immigrant.

A returning resident is "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit

---

[2] The applicant has made a motion before the Board to expunge and strike the Service's appellate brief from the record, as it was untimely filed. Although the brief was untimely, the Board concludes there exists sufficient cause for allowing it to remain in the record and be considered.

abroad." Section 101(a)(27)(A) of the Act, 8 U.S.C. § 1101(a)(27)(A) (1982). The phrase "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Section 101(a)(20) of the Act. Under the applicable regulation, a returning resident may present an Alien Registration Receipt Card in lieu of an immigrant visa if returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding 1 year. 8 C.F.R. § 211.1(b) (1988). Thus, in order to qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with our laws, must have retained that status from the time that he acquired it, and must be returning to an "unrelinquished lawful permanent residence" after a "temporary visit abroad." Santos v. United States INS, 421 F.2d 1303, 1305 (9th Cir. 1970); sections 101(a)(20) and (27)(A) of the Act; 8 C.F.R. § 211.1(b) (1988).

The term "temporary" is not subject to inflexible definition and varies in application depending upon the facts and circumstances of each particular case. See Gamero v. INS, 367 F.2d 123 (9th Cir. 1966). What is a temporary visit cannot be defined in terms of elapsed time alone. United States ex rel. Polymeris v. Trudell, 49 F.2d 730 (2d Cir. 1931), aff'd, 284 U.S. 279 (1932). Rather, the intention of the alien, when it can be ascertained, will control. Id.; Matter of Kane, 15 I&N Dec. 258 (BIA 1975); see also United States ex rel. Alther v. McCandless, 46 F.2d 288 (3d Cir. 1931). We have in the past ascertained an alien's intention by examining the location of his family ties, property holdings, and job, and whether he intended to return to the United States as a place of employment or business or as an actual home. Matter of Muller, 16 I&N Dec. 637 (BIA 1978); Matter of Quijencio, 15 I&N Dec. 95 (BIA 1974). We have also considered the applicant's purpose in departing from the United States, whether the visit abroad can be expected to terminate within a relatively short period of time, and whether the termination date can be fixed by some early event. Matter of Kane, supra.

We emphasize that "unrelinquished lawful permanent residence," as used in 8 C.F.R. § 211.1(b) (1988), can have reference to something less than a permanent dwelling place in the United States. See Saxbe v. Bustos, 419 U.S. 65 (1974); Matter of Kane, supra. Consequently, the applicant's lack of an actual dwelling place in this country is not, in and of itself, determinative in ascertaining whether he is returning from a temporary absence abroad.

Interim Decision #3079

*See Matter of Kane, supra; see also Matter of Guiot,* 14 I&N Dec. 393 (D.D. 1973).

It is important to note that the Service has the burden in this case of proving that the applicant is not eligible for admission as a returning permanent resident alien. While the burden of proving admissibility is generally on the applicant in exclusion proceedings, *see* section 291 of the Act, 8 U.S.C. § 1361 (1982), where an applicant for admission has a colorable claim to returning resident status, the burden is on the Service to show that the applicant should be deprived of his or her status as a lawful permanent resident. *Matter of Salazar,* 17 I&N Dec. 167 (BIA 1979); *Matter of Kane, supra.*

This Board has not previously articulated what burden of proof the Service must meet in order to establish that an applicant's lawful permanent resident status has changed. We now conclude that the Service's burden is to show that the applicant's status has changed by clear, unequivocal, and convincing evidence. In *Woodby v. INS,* 385 U.S. 276 (1966), the Supreme Court observed that drastic deprivation may follow if a resident of the United States is compelled to forsake all bonds formed in this country and go to a foreign land where the resident often has no current ties. The Court therefore held in that case that in deportation hearings the Service must establish facts supporting deportability by clear, unequivocal, and convincing evidence. An applicant for admission to this country who has a colorable claim to returning resident status similarly may often have much at stake in retaining his or her lawful permanent resident status.

For purposes of the constitutional right to due process, a returning lawful permanent resident's status is assimilated to that of an alien continuously residing and physically present in the United States. *Kwong Hai Chew v. Colding,* 344 U.S. 590 (1953). Although these differently situated groups of aliens do not have a right to identical treatment, and a returning lawful permanent resident's admissibility may be properly determined in an exclusion hearing, *Landon v. Plasencia,* 459 U.S. 21 (1982), the returning lawful permanent resident should be given reasonable notice of the charges against her and afforded a fair hearing. *Kwong Hai Chew v. Colding, supra.* Given what the alien may have at stake, it has also been held, as noted above, that a returning lawful permanent resident may only be deprived of that status in proceedings in which the Service bears the burden of proof. The Board similarly concludes that the deprivation that may follow also requires that the Service establish that such status has changed by clear, unequivocal, and convincing evidence.

In the case at hand, the immigration judge concluded that the applicants had never established a lawful permanent resident status in the United States. This conclusion was incorrect. The applicants acquired lawful permanent resident status in the United States at the time of their June 5, 1982, admission to this country. *See* section 101(a)(20) of the Act. *See generally* 2 C. Gordon and H. Rosenfield, *Immigration Law and Procedure*, § 6.17 (rev. ed. 1986). At that point, the applicants attained "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws," and were thus aliens "lawfully admitted for permanent residence" pursuant to section 101(a)(20) of the Act.

The immigration judge also found that the applicants, if they ever had attained lawful permanent resident status, had abandoned that status. The Board agrees. However, the Board would point out that the immigration judge was incorrect in concluding that the applicant's intent was irrelevant in determining whether she had abandoned that status. Although section 101(a)(33) of the Act defines "residence" as the principal, actual dwelling place in fact, without regard to intent, we are concerned with whether the applicant abandoned her lawful permanent resident status in this country, and not whether she abandoned a particular dwelling place. *See Matter of Kane, supra*. As noted above, an "unrelinquished lawful permanent residence" as used in 8 C.F.R. § 211.1(b) (1988) can refer to something less than a permanent dwelling place in the United States. *See Saxbe* v. *Bustos, supra*. The definition of "residence" in section 101(a)(33) of the Act, which would preclude consideration of the alien's "intent" in proceeding or remaining abroad, is inapplicable in determining whether an alien has abandoned her lawful permanent resident status. *Matter of Guiot, supra*. Nevertheless, the Board concludes that the Service has met its burden of proving by clear, unequivocal, and convincing evidence that the applicants in this case abandoned their lawful permanent resident status.

While the applicant's professed intent was to return to the United States, her actions have not supported that intent. An alien's desire to retain her status, without more, is not sufficient. *Matter of Kane, supra*. The length of the applicant's absence from the United States is a significant factor in showing her intent to abandon her lawful permanent resident status. Except for brief 3- to 4-week visits each year, the applicant and her children had been absent from the United States for approximately 4 years at the time of their last attempted entry in May 1986. During these brief visits, the applicant and her children resided with the sister of the

applicant's husband. Although the applicant and her husband have owned a house in Los Angeles, California, since 1985, they have never maintained a residence in the United States since being granted lawful permanent resident status in 1982. Since being granted that status, the applicant and her children have been living in Japan. The applicant's children have received their schooling in Japan and have reportedly only gone to school in this country for brief periods in 1982 and 1984 while visiting the sister of the applicant's husband. Additionally, the applicant and her husband owned a home in Japan until 1985.

Moreover, the applicant was employed in Japan for 3 years from 1982 to 1985. Her husband has studied and worked as a doctor in the field of neurosurgery at a university in Japan since June 1981 and, since returning to Japan in 1982, has never returned to the United States. The applicant asserts on appeal that her husband was required to remain in Japan, thus requiring that she and their children do the same, because her husband had entered into a 5-year contract in May 1981 to study and work at the university before they were notified that they could come to the United States as immigrants. As noted above, an extended period of absence from the United States, in appropriate circumstances, can be viewed as a temporary visit abroad if the end of the period of absence can be fixed by some early event. In the case at hand, the applicant argues that the period of absence was fixed by her husband's completion of his studies and work in the field of neurosurgery by attaining his doctorate degree at the university in question. However, the Board concludes that this does not provide a sufficiently definite point at which the applicant would return to the United States. In this regard, the Board would point out that the applicant initially testified that the time of her family's return was provided by the husband's 5-year contract with the university, which would have ended in June 1986. However, evidence submitted by the applicant, including a June 1987 letter from her husband, and statements made on appeal indicate that her husband did not plan on finishing his doctoral program and medical examinations until some time in 1988. In all, the record has not shown a clear demar-cation as to when her husband's relationship with the university would end and she and her family could return to the United States.

The Board acknowledges that the applicant has some ties to the United States, including a sister-in-law living in California, investment property and a house in California, payment of investment and property taxes, and a bank account reportedly maintained somewhere in the United States. However, given that the appli-

cants have never maintained a home or lived in the United States except for brief visits with the applicant's sister-in-law, these ties to the United States are minimal. Taking into account that the applicant has had extended absences from the United States, having lived and worked in Japan with her family for many years, the Board concludes that the status of the applicants as lawful permanent residents changed, that their absences were not temporary in nature, and that they are therefore not entitled to admission to the United States as returning permanent residents. The Service has met its burden of showing that they were excludable under section 212(a)(20) of the Act. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.

Concurring in Part and Dissenting in Part: Michael J. Heilman
Board Member

I respectfully concur in part and dissent in part.

In this decision, the majority rejects the immigration judge's finding that the applicants had failed to establish a permanent residence in the United States in 1982, when they were initially admitted as lawful permanent residents. Because the majority decision mischaracterizes the immigration judge's actual finding, the majority engages in a rather tangential analysis of section 101(a)(27) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27) (1982). I do not join in that portion of the majority decision, but do agree that the respondents should not be considered returning lawful permanent residents.

In my estimation, the immigration judge clearly found that the respondents had never established a permanent residence in the United States. The immigration judge stated that it was "obvious from this record" that the applicants "never actually resided in the United States, that they have never maintained a residence in this country." This finding is repeated twice more in the decision in similar terms: "I am satisfied that they did not establish a residence in this country . . . ." "There is no evidence in this record to indicate or to suggest that any member of this family ever established residence in the United States . . . ."

The majority focuses upon what is obviously an unintentional use of the word "status," in one sentence of the immigration judge's decision, where the word "residence" is certainly meant. The immigration judge stated: "To the contrary, I find that the applicants never established permanent status in the United States and that even if they did establish such *residence* that they have

long since abandoned that status." (Emphasis added.) I am completely satisfied from the immigration judge's decision that he was quite aware of the distinction to be made between being admitted to the "status" of a lawful permanent resident, as the applicants were in 1982, and the actual acquisition of a permanent "residence" in the United States.

It is because of the mischaracterization of the immigration judge's decision that the majority rejects his finding that the respondents never established a permanent residence in the United States. This finding appears to me to be eminently justified and to provide the primary basis for denying the applicants admission under the terms of section 101(a)(27) of the Act, which provides for the admission of lawful permanent residents following a "temporary visit abroad."

It was recognized in *Matter of Kane,* 15 I&N Dec. 258, 261 (BIA 1975), that an alien who had been "lawfully admitted for permanent residence" could be denied admission subsequently under section 101(a)(27) of the Act if it was determined that the applicant had "no ties of residence or employment, either because he has abandoned them, or *because he never had them in the first place.*" (Emphasis added.) If one does not take into account in this appeal the circumstances of the initial arrival of the applicants in this country when they first received permanent resident status, it seems to me that the analysis which follows is a bit awkward, and the Board and federal court decisions which are cited end up somewhat beside the point.

Here, the applicants were admitted, and returned to Japan 3 or 4 weeks after their admission, having stayed at a relative's home. Their visit was somewhat longer than that of their husband and father, the principal immigrant in the family, from whose immigrant status they derived their right to immigrate. He had come to the United States in 1982, been admitted as a permanent resident, and returned to Japan where he was studying and working. He apparently left before the applicants themselves arrived. He never returned to the United States after that. The applicants, as noted by the majority, made a number of short visits to the United States over a period of several years, during which time they established none of the ties ordinarily associated with permanent residence.

We are thus faced with a situation in which these applicants wish to be considered lawful permanent residents who are returning from "temporary" visits abroad under circumstances which clearly establish that no permanent residence was ever established. The applicants have never asserted that they intended to emigrate to the United States independently of their husband and father, or

that they established a separate household. The record, to the contrary, shows without doubt that they continued to reside with him, that his employment and studies determined where they would live. It was his choice to live, study, and work in Japan for an indefinite period, a choice to which he was obviously committed even prior to the time he journeyed to the United States to obtain his permanent resident status. It is not necessary to conjecture as to his intentions, or probe his mind; his conduct is ample evidence of what he desired to do and in fact did do. The applicants here followed his lead and merely returned to the United States when it was convenient, in order to maintain the pretense that they "intended" to reside in the United States, and so maintain their lawful permanent resident status.

Under these circumstances, the immigration judge was correct in finding that the applicants had never established a permanent residence in the United States. As this is so, they cannot be considered persons who are returning from "temporary" visits abroad. Their visits to the United States have been temporary, their permanent residence has been abroad.

For these reasons also I would dismiss the appeal.