MATTER OF GUIOT

In Section 223 Proceedings

A-14673904

*Decided by District Director July 16, 1973*

An alien admitted to the United States for permanent residence who desires to depart for approximately two years to teach at a university abroad, who is taking with him his family and all of his possessions, whose principal place of abode will be abroad during that period, but who firmly intends to thereafter return to the United States, is eligible for the issuance of a reentry permit since he still enjoys the status of an alien "lawfully admitted for permanent residence" as that term is defined in section 101(a)(20) of the Immigration and Nationality Act.

This matter is before me on remand by the Regional Commissioner for reconsideration and a new decision on the application which was filed on August 21, 1972 and denied by this office on August 25, 1972.

The previous decision in this case was based on our conclusion that the applicant would abandon his status as a lawful permanent resident of the United States upon his departure to Canada where he intended to remain for somewhat less than two years. During the anticipated stay in Canada the applicant intended to teach at a university, and would not be required to pay income tax to the Canadian Government. Additionally, after departure to Canada the applicant would have no residence, family, real or personal property, checking or savings account, or other ties which would require his return to this country. However, during an interview with an officer of this Service prior to his departure, the applicant insisted that it was his firm intention to return to the United States to reside permanently upon completion of his teaching assignment in Canada.

Thorough review of precedent court and administrative decisions failed to disclose a case which completely paralleled the application before us. Accordingly, after review of numerous decisions which related in part to determinations regarding abandonment of permanent resident status, we concluded that the definition of the term "residence" in section 101(a)(33) of the Immigration and Nationality Act, as amended, was applicable in the instant case. The term "residence" defined therein means, "the

393

place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, *without regard to intent.*" (Emphasis added.) Clearly, when the applicant departed to Canada, severing all material ties with this country, his place of residence or general abode was in Canada rather than in the United States. Since intent can play no part when considering the definition of residence under section 101(a)(33) of the Act, we concluded that the applicant was not entitled to a permit to reenter the United States as his departure would constitute abandonment of his status as a lawful permanent resident of the United States. Therefore, his application for permit to reenter the United States was denied.

It now appears, after further study of the statute and consideration of helpful information furnished by other Service offices, that our decision was in error and the literal definition of the term "residence" contained in the statute should not be applied to the word "residence" contained within the term "lawfully admitted for permanent residence." The latter term is defined in section 101(a)(20) of the Act and means, "the status of hving been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."

Both the term "residence" and the term "lawfully admitted for permanent residence" are defined terms under the Act, and we see no reason to apply the former to construe the latter. In fact, to do so would compel a holding that every lawful permanent resident hotel dweller or rooming house lodger who was figuratively "living out of a hat box" and decided to take a strictly temporary, albeit extended, trip abroad with all his worldly possessions without continuing to rent his hotel room or other lodging, had thereby abandoned his lawful permanent residence in the United States. That holding would be required in the instant case if we were to follow this rationale, as the place of residence abroad would be the "principal, actual dwelling place in fact" since under the definition of "residence" intention must be disregarded. Under the same reasoning, even if the instant applicant had rented a home for his wife and children and left them in the United States while he worked abroad, *his* principal, actual dwelling place in fact would be his temporary foreign residence. Indeed such reasoning could achieve the absurd result of requiring the denial of every application for a reentry permit on the ground that, during the applicant's absence, his principal, actual dwelling place in fact will be abroad. This certainly was not the intent of Congress.

Section 223 of the Act permits the issuance of a reentry permit to an alien who "has been lawfully admitted for permanent

residence," if the applicant desires to visit abroad and return to the United States to resume that status. The application must be made in good faith, and the applicant's proposed departure must not be contrary to the interest of the United States.

Consequently, we believe the definition of "residence" in section 101(a)(33) of the Act, which would preclude consideration of the alien's "intent" in proceeding or remaining abroad, is inapplicable in determining whether an alien is qualified for issuance of a reentry permit or for admission as a returning lawful resident. Instead, the definition of "lawfully admitted for permanent residence" in section 101(a)(20) is applicable. In applying that definition—"the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed"—two determinations are involved. The first is whether the alien was lawfully admitted as an immigrant or whether he otherwise lawfully acquired permanent resident status. The second is whether such status has not changed.

The status of an alien, for whom the first determination is favorable, may have changed through rescission of his permanent resident status under section 246 of the Act, or through adjustment of status to that of a nonimmigrant under section 247 of the Act. It may have changed if the alien departs when a final order has been entered in deportation proceedings finding him to be deportable and ordering him deported. Under such circumstances, issuance of a document entitling him to readmission as a returning resident would be inappropriate because his departure would execute the outstanding order of deportation and, therefore, he could not resume lawful permanent resident status upon return. (*Matter of Mosqueda*, Int. Dec. No. 2127.) The status of the alien also may have changed by departure without the intent to return to the United States (*Matter of B—*, I. & N. Dec. 211), or by formulation of an intent to abandon his residence in this country while abroad.

Use of the definition in section 101(a)(20) rather than the definition in section 101(a)(33) of the Act permits consideration of the alien's intent in departing or remaining abroad. The alien's actions, such as claiming nonresident alien status for Federal income tax purposes, knowing such a claim is inconsistent with status as a lawful permanent resident for immigration purposes, may be a consideration in determining intent. In this respect, the applicant has met the burden. Therefore, we conclude that the applicant has established satisfactorily his intent to return to resume his lawful permanent resident status. Accordingly, the

application for permit to reenter the United States should be granted.

ORDER: It is hereby ordered that the decision entered in this case on August 25, 1972 be withdrawn.

It is further ordered that the application for permit to reenter the United States be, and the same hereby is, granted.