MATTER OF LOK

In Deportation Proceedings

A-31327663

*Decided by Board July 31, 1981*

(1) The lawful permanent resident status of an alien terminates within the meaning of section 101(a)(20) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(20), with the entry of a final administrative order of deportation, *i.e.*, when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired.

(2) Once a final administrative order of deportation has been entered, barring a reversal on the merits of the deportability finding by an appellate court or administratively upon a motion for reopening or reconsideration, an alien may not thereafter establish eligibility as a lawful permanent resident for relief under section 212(c) of the Act, 8 U.S.C. 1182(c), nor may his domicile in this country from then on be considered lawful for purposes of that section.

(3) In order for an alien to establish a domicile in the United States, he must be physically present in this country and have the intention of residing here permanently or indefinitely; for that domicile to be considered lawful within the meaning of section 212(c) of the Act, the alien's presence in the United States must be lawful within the meaning of this country's immigration laws.

(4) The Immigration and Nationality Act sanctions the continuing presence in this country of but one class of aliens other than those lawfully admitted for permanent residence, namely, nonimmigrants in compliance with the terms and conditions of their admission.

(5) Government action or policy to refrain from instituting deportation proceedings against an alien or enforcing his deportation notwithstanding, an alien in breach of the terms and conditions of his nonimmigrant status remains in the United States at the sufferance of the Government, not under any lawful status accorded him by the Act.

(6) A nonimmigrant crewman who complied with the conditions of his admission and did not intend to remain in this country beyond the fixed period of his temporary stay may not establish that he was "domiciled" here during the time his stay as a nonimmigrant was authorized under our immigration laws; conversely, if the nonimmigrant crewman did intend to make the United States his permanent home and domicile, he was in violation of the conditions of his admission and was not here "lawfully."

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. 1251(a)(11)]—Conviction of violation of law relating to narcotic drugs

ON BEHALF OF RESPONDENT:
Stanley H. Wallenstein, Esquire
Schiano & Wallenstein
80 Wall Street
New York, New York 10005

ON BEHALF OF SERVICE:
Lloyd A. Sherman
Trial Attorney

Interim Decision #2878

By: Milhollan, Chairman; Maniatis, and Vacca, Board Members

This case comes to us pursuant to a Stipulation and Order of Remand entered by the United States Court of Appeals for the Second Circuit on June 18, 1980. *Tim Lok* v. *INS*, No. 80-4076 (2 Cir. 1980). A complex procedural history preceded the court's present order in the case.

The respondent, a native and citizen of China, now 43 years of age, entered the United States as a nonimmigrant crewman in July 1959, and was authorized to remain in this country no longer than 29 days. He failed to depart within the authorized period. At a deportation hearing conducted on October 26, 1965, an immigration judge found the respondent deportable under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), granted him the privilege of voluntary departure in lieu of deportation, but ordered him deported from the United States in the event of his failure to depart voluntarily within the period specified by the District Director. Voluntary departure was ultimately authorized, with extensions, to March 2, 1969, to permit Congressional consideration of private bills introduced in the respondent's behalf.

On February 27, 1968, the respondent married a United States citizen who on February 3, 1969, one month before the respondent's voluntary departure authorization was to expire, filed a visa petition to accord him immediate relative status. Under existing Service policy, the order of deportation outstanding against the respondent was not enforced pending adjudication of the visa petition. The visa petition was approved on January 30, 1970, and forwarded to the United States Consulate in Hong Kong where the respondent was to apply for an immigrant visa based upon his marriage.[1]

On October 25, 1971, the respondent left the United States for Hong Kong to obtain his immigrant visa, apparently thus effecting his deportation under the 1965 order of deportation.[2] Section 101(g) of the Act, 8 U.S.C. 1101(g); 8 C.F.R. 243.5. In November 1971, the respondent applied for and received permission from the Attorney General to reapply for admission following deportation and was thereafter issued his immigrant visa by the consul in Hong Kong. He was admitted to the United States for lawful permanent residence on December 26, 1971.

---

[1] Section 245 of the Act, 8 U.S.C. 1255, which permits adjustment of status in this country, does not apply to aliens who entered as crewmen.

[2] The Second Circuit appears to have concluded that the respondent left the country while still in voluntary departure status. *Lok* v. *INS*, 548 F.2d 37, 38 (2 Cir. 1977). We find no indication in the record that the voluntary departure period granted the respondent was extended beyond March 3, 1969. Resolution of the question is not, however, necessary to a disposition of the case.

In early 1973, the respondent was convicted upon his plea of guilty of offenses relating to the possession and distribution of narcotic drugs. The present deportation proceedings were thereupon instituted by the issuance of an Order to Show Cause charging the respondent with deportability under section 241(a)(11) of the Act, 8 U.S.C. 1251(a)(11), as an alien convicted of a drug-related crime. At the deportation hearing that ensued, the respondent conceded deportability but contended that he was eligible for relief from deportation through a discretionary waiver under section 212(c) of the Act, 8 U.S.C. 1182(c), which provides in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraph (1) through (25) and paragraphs (30) and (31) of subsection (a).[3]

The immigration judge found the respondent deportable as charged and rejected his claim of eligibility for section 212(c) relief in a decision dated May 29, 1975. On July 30, 1976, the Board affirmed the immigration judge's decision. With respect to the denial of relief under section 212(c), we relied upon our decision in *Matter of S-*, 5 I&N Dec. 116 (BIA 1953), decided some 24 years earlier, in which we held that in order to comply with the "lawful unrelinquished domicile" requirement of the statute an alien must have maintained a domicile in the United States for 7 consecutive years subsequent to his lawful admission for permanent residence. *Matter of Lok*, 15 I&N Dec. 720 (BIA 1976). Inasmuch as the respondent had not been admitted as a lawful permanent resident until 1971, we determined that he did not have the requisite 7 years of lawful domicile and was consequently statutorily ineligible for section 212(c) relief. *Matter of Lok, id.* The respondent filed a petition for review of our decision with the United States Court of Appeals for the Second Circuit.

In *Lok v. INS*, 548 F.2d 37 (2 Cir. 1977), entered on January 4, 1977, the Second Circuit rejected our long-standing interpretation of the phrase "lawful unrelinquished domicile" and reversed our decision in the case. Finding that the statutory terms "lawfully admitted for permanent residence" and "lawful unrelinquished domicile" could not be equated, the court concluded that it is in fact possible for an alien to possess a "lawful domicile" in this country without having been admitted for permanent residence and that the entire 7 years of lawful domicile need not .

---

[3] Although section 212(c) by its terms applies only to excludable aliens seeking admission to the United States, we have held, following the Second Circuit's decision in *Francis v. INS*, 532 F.2d 268 (2 Cir. 1976), that section 212(c) relief is available in deportation proceedings notwithstanding the fact that the respondent had not departed from this country since the act or event that rendered him excludable and deportable. *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).

necessarily be accumulated after the alien acquires permanent resident status.[4] The court remanded the case to the Board for a determination as to whether the respondent's domicile prior to his 1971 admission had been "lawful."

On January 13, 1978, we remanded the record to the immigration judge for initial consideration of the issue framed by the Second Circuit and ordered that the case be certified back to the Board for review. *Matter of Lok,* 16 I&N Dec. 441 (BIA 1978). In a decision dated June 14, 1979, the immigration judge again found the respondent statutorily ineligible for the relief sought under section 212(c), holding that no portion of the respondent's domicile prior to his 1971 admission for permanent residence was lawful. Recognizing that more than 7 years by then had elapsed since the respondent's admission for permanent residence in December 1971, the immigration judge further held that the respondent's lawful status, which began with that admission, ended in May 1975 when he was found deportable and ordered deported from the United States.[5] The immigration judge thus concluded that the respondent had satisfied only 3 ½ years of the requisite 7-year period of lawful domicile.

In considering the case upon certification, we adopted the immigration judge's findings of fact and conclusions of law and affirmed his decision without extended discussion in an unpublished *per curiam* opinion dated November 8, 1979.[6] The respondent again sought review of our decision in the Second Circuit.

Bringing the case to its present posture, the court, pursuant to stipulation between the parties, entered its June 18, 1980, order remanding the case to the Board for reexamination of the following "remanded question:"

> Whether the immigration judge erred in concluding that his 1975 deportability finding terminated [the respondent's] lawful domicile under section 212(c) and in holding that, as a result, [the respondent] was ineligible in 1979 for relief under that provision.

The court's order further instructs the Board to set forth the reasons for its conclusion in a written opinion in the event the decision on remand is adverse to the respondent.

---

[4] We declined to apply the decision in *Lok* v. *INS,* 548 F.2d 37 (2 Cir. 1977), in cases arising outside the Second Circuit. *Matter of Anwo,* 16 I&N Dec. 293 (BIA 1977).

[5] The immigration judge additionally concluded that the respondent was barred by his deportation in October 1971 from establishing eligibility for section 212(c) relief. The foregoing theory is not presently advanced by the Government as a basis for denying the relief sought and we need not and do not address its merits.

[6] In affirming the immigration judge's June 1979 holding that the respondent's lawful status ended when he was initially found deportable in May 1975, we referred to dictum in our earlier decision in *Matter of Hinojosa,* 17 I&N Dec. 34 (BIA 1979), to the effect that an "adjudication" of deportability terminates an alien's "lawful status." *See also Matter of Hinojosa,* 17 I&N Dec. 322 (BIA 1980).

We note at the outset that while the immigration judge and the court in its remand order couched the question, in terms of whether the respondent's "lawful domicile" came to an end with the immigration judge's May 1975 finding of deportability, the precise legal issue before us is whether the respondent's status as an alien "lawfully admitted for permanent residence" was then terminated.[7] The loss of lawful permanent resident status is a necessary corollary to the loss of lawful domicile since it is illogical to conclude that the domicile of one who retains his lawful permanent resident status could be anything but lawful. The question confronting us, then, is: At what point in the deportation proceedings does the status of an alien lawfully admitted for permanent residence come to an end?

Termination of Lawful Permanent Resident Status

The term "lawfully admitted for permanent residence" within section 212(c) is a defined term whose definition is set forth in section 101(a)(20) of the Act, 8 U.S.C. 1101(a)(20), as follows:

The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. (Emphasis added.)

The pivotal underlined language was not, however, defined by Congress.

We have carefully examined the various stages within the deportation process at which the status of an alien "lawfully admitted for permanent residence" may be considered to have changed within the meaning of section 101(a)(20) of the Act: (1) upon the immigration judge's initial determination of deportability, (2) when the immigration judge's order becomes administratively final, (3) when a United States Court of Appeals acts upon a petition for review of the Board's order or the time allowed for filing such petition expires, or (4) only upon the execution of the deportation order by the alien's departure, voluntary or enforced, from this country. Upon reconsideration, we conclude that the policies of the Act would best be served by deeming the lawful permanent resident status of an alien to end with the entry of a final administrative order of deportation — generally, when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired. 8 C.F.R. 3.1(d)(2); 8 C.F.R. 242.20; 8 C.F.R. 243.1.

Thus, we hold that the respondent's lawful permanent resident status terminated on July 30, 1976, with the Board's affirmance of the immigration judge's determination of deportability. Barring a reversal on the merits of that deportability finding by an appellate court or administra-

---

[7] The distinction is subtle but not entirely inconsequential in light of certain privileges that attach to lawful permanent resident status. (*See* discussion, *infra*.)

tively upon a motion for reopening or reconsideration, the respondent could not thereafter establish eligibility as a lawful permanent resident for section 212(c) relief nor could his domicile in this country from then on be considered lawful.

It is established that the mere occurrence of an act or event which provides a basis for an alien's deportation does not in itself cause the alien's status as a lawful permanent resident to change within the contemplation of section 101(a)(20). *Matter of Salmon*, 16 I&N Dec. 734 (BIA 1978); *Matter of S-*, 6 I&N Dec. 392 (BIA 1954; A.G. 1955). *Cf. Matter of Hinojosa, supra.* At the other end of the spectrum, we have held that the lawful permanent resident status of an alien is terminated when he departs the United States after having been ordered deported, thereby executing the outstanding order of deportation. *Matter of Mosqueda*, 14 I&N Dec. 55 (R.C. 1972). *See also Matter of Kane*, 15 I&N Dec. 258 (BIA 1975); *Matter of Guiot*, 14 I&N Dec. 393 (D.D. 1973). *Cf. Matter of Iqal*, 10 I&N Dec. 460 (BIA 1964).

While it is settled than an alien who departs the United States under an order of deportation thereby loses his lawful permanent resident status (*see Matter of Mosqueda, supra*), it by no means follows that the alien retains that status, with all the rights that attach thereto, until such departure. We find the proposition that an alien under a final order of deportation may remain a lawful permanent resident inherently incongruous. Were that the case, for example, a clearly deportable alien who has exhausted all of his administrative and judicial appeal rights but whose departure cannot for some reason be enforced (*e.g.*, for lack of a country that will accept him into its territory) may continue to accord designated relatives visa preference so long as he remains in this country. We decline to adopt a position that could produce such anomalous result.

On the other hand, we are satisfied upon reconsideration of our November 1979, decision that termination of lawful permanent resident status upon the immigration judge's initial adjudication of deportability is premature. An alien is entitled as of right to appeal to the Board from an immigration judge's finding of deportability, the final administrative recourse available to him. 8 C.F.R. 3.1(b)(2); 8 C.F.R. 242.21. The Board is not bound by the immigration judge's conclusions but rather has plenary power to review the record *de novo* and to make its own independent determinations on questions of law and fact. *Matter of Becerra-Miranda*, 12 I&N Dec. 358 (BIA 1967); *Matter of Vilanova-Gonzalez*, 13 I&N Dec. 399 (BIA 1969), and the cases cited therein. Under the circumstances, we believe that where a timely appeal to the Board is taken or the Board considers the case upon certification as provided in 8 C.F.R. 3.1(c), the time the Board renders its decision, rather than some earlier point in time, ought to govern when the status

of an alien lawfully admitted for permanent residence changes within the meaning of section 101(a)(20) of the Act on account of his being adjudged deportable.[8]

We further conclude that lawful permanent resident status ought not be considered to continue beyond the entry of a final administrative order of deportation through the judicial appellate process. Authority to adjudicate an alien's deportability is vested primarily in the Attorney General and his delegates, the immigration judge and the Board. Where an administrative appeal has been taken, the alien is entitled to seek review of an adverse decision of the Board in the United States Circuit Courts of Appeals pursuant to the provisions of section 106 of the Act, 8 U.S.C. 1105a. However, in contrast to the Board's *de novo* review powers, the appellate courts' scope of review is limited. Assuming no error of law or unfairness in procedure, the court must affirm the administrative order of deportation if the order is supported by reasonable, substantial, and probative evidence of record. Section 106(a)(4) of the Act, 8 U.S.C. 1105a(a)(4).

To hold that an alien under a final administrative order of deportation remains a lawful permanent resident throughout the judicial proceedings would encourage spurious appeals to the courts, made solely for the purpose of accumulating more time toward eligibility for section 212(c) relief. The termination of lawful permanent resident status upon the entry of a final administrative order of deportation, on the other hand, would result in no ultimate prejudice to the alien. In those relatively rare instances where the court determines that the Board erred, as a matter of fact or law, with respect to its deportability finding, reversal of the Board's order of deportation nullifies the order and restores the alien's lawful permanent resident status.

We recognize that certain prior Board decisions, both precedent and unreported,[9] suggest a result contrary to our present holding. *See, e.g., Matter of Mosqueda, supra.* However, we have never before directly addressed the specific issue here presented. To the extent any conflict exists, our decision in the instant case supersedes our previous decisions.

---

[8] Other circumstances under which lawful permanent resident status may change include: through rescission of adjustment of status under section 246 of the Act, 8 U.S.C. 1256 (*see Matter of Guiot,* 14 I&N Dec. 393 (D.D. 1973); through adjustment to nonimmigrant status pursuant to section 247 of the Act, 8 U.S.C. 1257 (*see Matter of S-,* 6 I&N Dec. 392 (BIA 1954; A.G. 1955); when an alien departs the United States under an order of deportation (*Matter of Mosqueda,* 14 I&N Dec. 55 (R.C. 1972)) or under an order of exclusion and deportation (*Matter of Iqal, 10 I&N Dec. 460 (BIA 1964); and when he relinquishes such status, intentionally (Matter of Montero,* 14 I&N Dec. 399 (BIA 1973)) or unintentionally *(Matter of Kane,* 15 I&N Dec. 258 (BIA 1975)).

[9] Board decisions not selected as precedents are not binding in subsequent proceedings. *See generally* 8 C.F.R. 3.1(g).

Lawfulness of Domicile
Prior to
Admission as Lawful Permanent Resident

To hold that the respondent's lawful permanent resident status ended when the order of deportation outstanding against him became administratively final on July 30, 1976, does not end our inquiry in the case. Pursuant to *Lok* v. *INS*, 548 F.2d 37 (2 Cir. 1977), which is binding upon us in this and in other cases arising within the Second Circuit,[10] we must also determine whether the respondent's domicile in this country immediately preceding his December 1971, admission for permanent residence was "lawful" and, if so, whether that period of domicile, tacked onto his indisputably lawful domicile following his acquisition of permanent resident status, totaled at least 7 years at the time of our July 1976 decision.

The respondent argues that his domicile in the United States was lawful from the date of his marriage to a United States citizen in February 1968. He points to the fact, uncontroverted by the Government, that he came within the protection of formal Service policy as a consequence of his marriage whereunder he was permitted to remain in this country, notwithstanding the 1965 deportation order outstanding against him, until such time as he was eligible to apply for an immigrant visa. Thus, the respondent insists, his lawful domicile, having begun on February 27, 1968, totaled more than 7 years by the time the immigration judge rendered his May 1975 decision. We agree with the immigration judge that no portion of the respondent's domicile prior to his admission for permanent residence in December 1971 was lawful.

In order for an alien to establish a domicile in the United States, he must be physically present in this country and have the intention of residing here permanently or indefinitely. *Anwo* v. *INS*, 607 F.2d 435 (D.C. Cir. 1979); *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980), and the cases cited therein. For that domicile to be considered "lawful," however, the alien's presence here must be lawful within the meaning of this country's immigration laws. *Cf. Kan Kam Lin* v. *Rinaldi*, 361 F.Supp. 177 (D.N.J. 1973), aff'd mem., 493 F.2d 1229 (3 Cir. 1974); *Ming* v. *Marks*, 367 F.Supp. 673 (S.D.N.Y. 1973), aff'd, 505 F.2d 1170 (2 Cir. 1974); *Matter of Dunar*, 14 I&N Dec. 310 (BIA 1973). The Immigration and Nationality Act sanctions the continuing presence in this country of but one class of aliens other than those lawfully admitted for permanent residence, namely, nonimmigrants in compliance with the terms and conditions of their admission. *See generally Kan Kam Lin* v. *Rinaldi*, supra; *Ming* v. *Marks*, supra; *Matter of Dunar*, supra.

An alien in breach of his nonimmigrant status, such as the respondent

---

[10] *But see Matter of Anwo, supra.*

in the instant case, has no claim of right under the Act to remain in this country. The fact that the Government refrains, in an individual case or as a matter of general policy, from instituting deportation proceedings against an alien or enforcing his deportation does not legalize the status of the beneficiary of the Government's forebearance. He remains in the United States at the sufferance of the Government, not under any lawful status accorded him by the Act.[11]

The respondent's reliance upon the Second Circuit's decision in *Holley* v. *Lavine*, 553 F.2d 845 (2 Cir. 1977), is misplaced. At issue in that case was whether an alien with six United States citizen children who had been given official assurance that the Service did not presently intend to enforce her departure from this country was eligible under a federal regulation which assured financial aid to qualified aliens residing permanently in the United States "under color of law." The court held in favor of the alien, who had entered the country with a nonimmigrant student visa, long since expired. Noting that the phrase "under color of law" obviously included situations not covered by specific authorization of law, the court left no doubt that the alien in question was *"unlawfully residing in the United States." Id.* at 849. (Emphasis added.)

Furthermore, the respondent may not establish that he had a lawful domicile in the United States even during the brief period his stay in this country was authorized under our immigration laws. In order to qualify as a nonimmigrant crewman, an alien must be one who "intends to land temporarily and solely in pursuit of his calling as a crewman . . . ." Section 101(a)(15)(D) of the Act, 8 U.S.C. 1101(a)(15)(D). An alien crewman may be granted authorization to land in this country for a period not exceeding 29 days. Section 252 of the Act, 8 U.S.C. 1282; 8 C.F.R. 252.1(d).

In *Elkins* v. *Moreno*, 435 U.S. 647 (1978), the Supreme Court recognized that the intent to form a domicile in the United States is incompatible with the terms and conditions of an alien's admission as a nonimmigrant in the case of many of the nonimmigrant categories set forth in section 101(a)(15) of the Act, including the nonimmigrant crewman classification. *Id.* at 665. If the respondent complied with the terms of his admission and did not intend to remain in the United States beyond the fixed period of his temporary stay, then he was not "domiciled" in this country. Conversely, if he did intend to make the United States his permanent home and domicile, he violated the conditions of his admission and was not here "lawfully." *See generally Elkins* v. *Moreno*,

---

[11] We find nothing in *Parco* v. *Morris*, 462 F.Supp. 976 (E.D. Pa. 1977), a case commended to us by the respondent concerning a different aspect of the Service policy here involved. which would lead us to conclude that the respondent's domicile in this country prior to December 1971 was lawful. In any event, as the Service points out, *Noel* v. *Chapman*, 508 F.2d 1023 (2 Cir. 1975). not *Parco* v. *Morris. supra*. governs in the Second Circuit.

*supra; Anwo* v. *INS, supra; Castillo-Felix* v. *INS,* 601 F.2d 459 (9 Cir. 1979); *Matter of Anwo,* 16 I&N Dec. 293 (BIA 1977).

On the basis of the foregoing discussion, we conclude that the respondent's lawful domicile began with his admission for lawful permanent residence on December 26, 1971, and ended with the termination of his lawful permanent resident status on July 30, 1976, when the order of deportation outstanding against him became administratively final. We thus hold that the respondent is statutorily ineligible for the relief he seeks under section 212(c) of the Act. The following order will be entered.

ORDER: The respondent's application for relief from deportation under section 212(c) of the Act is denied.

Board Members Mary P. Maguire and James P. Morris abstained from consideration of this case.